6          IN THE UNITED STATES DISTRICT COURT FOR THE

7                  EASTERN DISTRICT OF CALIFORNIA

8

9  ELEANOR TERAN,                )      No. CV-F-07-1476 OWW/GSA
                                 )
10                               )      MEMORANDUM DECISION AND
                                 )      ORDER GRANTING IN PART AND
11            Plaintiff,         )      DENYING IN PART DEFENDANT
                                 )      WOODVILLE UNION SCHOOL
12       vs.                     )      DISTRICT'S MOTION TO DISMISS
                                 )      AND TO STRIKE SECOND AMENDED
13                               )      COMPLAINT (Docs. 30),
   STEVE HAGOPIAN, et al.,       )      DENYING DEFENDANT HAGOPIAN'S
14                               )      MOTION TO DISMISS OR TO
                                 )      STRIKE AS MOOT (Doc. 33),
15            Defendants.        )      AND DIRECTING PLAINTIFF TO
                                 )      FILE THIRD AMENDED COMPLAINT
16 _____)

17

18

19
        This action was commenced on October 10, 2007.  By
20
   Memorandum Decision and Order filed on November 5, 2008
21
   ("November 5 Memorandum Decision"), Plaintiff was ordered to file
22
   a Second Amended Complaint ("SAC").
23
        The SAC was timely filed.  Defendants are Woodville Union
24
   School District, Steve Hagopian, and Does 1-100.  The SAC sets
25
   forth allegations common to all claims for relief:
26

                                  1

1    8. ELEANOR is informed and believes, and
     thereon alleges, that in or about 1996
2    through 1997, ELEANOR was attending third
     grade at Woodville Elementary School, in the
3    WOODVILLE UNION SCHOOL DISTRICT, whereby her
     teacher, STEVE HAGOPIAN, began sexually
4    molesting her.

5    9. The sexual molestation occurred during
     recess. Defendant HAGOPIAN had blackened his
6    classroom windows purposely so that no one
     would be able to see his sexual acts with
7    ELEANOR.  Defendant HAGOPIAN would force
     ELEANOR to remain in class while he sexually
8    touched her. These sexual acts consisted of,
     but not limited to, digital penetration into
9    ELEANOR'S vagina, rubbing her clitoris/vulva
     area, touching her body over and under her
10   clothing, touching her buttocks and chest,
     and forcing ELEANOR to walk on all fours like
11   a dog. While Defendant was touching ELEANOR,
     he would repeatedly ask if she enjoyed it.
12   Defendant told ELEANOR that if she told her
     parents what he was doing, they would not
13   believe her and would disown her, leaving her
     without a family. ELEANOR believed Defendant.
14   Thus, she felt very alone, isolated and
     unable to confide in her mother what was
15   occurring. ELEANOR further suffered great
     emotional trauma, pent-up anger, difficulty
16   sleeping, nightmares, inhibitions, flashbacks
     and overwhelming disdain for Defendant,
17   HAGOPIAN, which prohibited her from receiving
     a proper third grade education, and has had a
18   permanent impact on her young life.

19   10. Defendant HAGOPIAN, while in the
     classroom setting engaged in the following
20   non-sexual conduct, including, but not
     limited to:
21
22        a. HAGOPIAN called overweight students
          "fatso," "gordo" or "gordita."
23
          b. HAGOPIAN used the "N" word and would
24        yell out "White Power."

25        c. HAGOPIAN harassed ELEANOR and others by
          forcing students to buy his school
26        supplies and asking students for money.

                              2

d. HAGOPIAN called several students "dumb" and "stupid."

e. HAGOPIAN allowed students to fight each other in class and even encouraged it.

f. HAGOPIAN confided to another teacher, Wendy, that he made students walk on their hands and knees as a form of punishment.

g. HAGOPIAN yelled at ELEANOR in front of the entire class because she did not understand multiplication.

h. HAGOPIAN made ELEANOR massage his feet in front of the entire class and when she refused, he pulled her by her ponytail over to his desk to massage his feet during class in violation of *California Education Code* section 49000.

i. ELEANOR witnessed HAGOPIAN allow one student to chase another student with a real knife in his hand and HAGOPIAN laughed about it.

11. ELEANOR is informed and believes, and thereon alleges that ELEANOR's mother discovered that ELEANOR was being molested by HAGOPIAN in February 2002. Immediately after learning of the molestation, ELEANOR's mother traveled to WOODVILLE School to ask why she had not been informed by the school. WOODVILLE advised ELEANOR's mother that the molestation was under investigation and would be handled swiftly. ELEANOR's mother made numerous follow up visits to the WOODVILLE school and was again promised that the matter was being taken care of. In July 2002, ELEANOR's mother filed an application for leave to file a late claim, which was denied on August 7, 2002. Thereafter, ELEANOR's mother filed a Petition for Relief from the Claims requirement.

12. ELEANOR is informed and believes, and thereon alleges that leave to make a late claim was filed by ELEANOR's mother on July 15, 2002, within the accrual period and complying with the requirement to file a

Government Tort Claim. The accrual date began at discovery of the molestation on February 8, 2002, when ELEANOR'S mother discovered the fact of the molestation through ELEANOR'S counselor. This action was filed within a year of ELEANOR reaching the age of eighteen.

13. As a prerequisite to obtain relief from Government Code section 911.2 and the six month filing deadline, application for relief from the claim requirement and leave to make late claim was filed by ELEANOR's mother on July 15, 2002. The application for late claim was presented within the statutory time limits for presentation to a public entity, under California Government Code 911.4.

14. PLAINTIFF is informed and believes and thereon alleges, that on numerous occasions, the Superintendent and the Principal of WOODVILLE promised ELEANOR's mother that an investigation into the allegations was being conducted by the WOODVILLE School District. WOODVILLE intended that Plaintiff's mother withhold from acting upon the allegations in relying on WOODVILLE's assurances. In reliance on the statements made by WOODVILLE, ELEANOR's mother was unaware of the full and true facts of the matter and withheld further action until ELEANOR's mother realized no further action was forthcoming from WOODVILLE.

15. The retaliatory threats of HAGOPIAN to ELEANOR should she tell her mother of his actions were intended to intimidate PLAINTIFF and prevent disclosure of the wrongful acts by HAGOPIAN, thereby preventing any claim be made on behalf of ELEANOR by her mother.

Defendants Woodville and Hagopian filed motions to dismiss the SAC for failure to state a claim upon which relief can be granted and motions to strike.

At the hearing, counsel for Plaintiff and Hagopian advised that they have settled the action for monetary damages in exchange for dismissal of the action against Hagopian. Defendant

4

Hagopian withdrew his motion to dismiss the SAC.  Defendant
Hagopian's motion to dismiss and to strike is DENIED AS MOOT.

   A.   GOVERNING STANDARDS.

        1.   Motion to Dismiss.

   A motion to dismiss under Rule 12(b)(6) tests the
sufficiency of the complaint.  *Novarro v. Black*, 250 F.3d 729,
732 (9th Cir.2001).  "A district court should grant a motion to
dismiss if plaintiffs have not pled 'enough facts to state a
claim to relief that is plausible on its face.'" *Williams ex rel.*
*Tabiu v. Gerber Products Co.,* 523 F.3d 934, 938 (9th Cir.2008),
quoting *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544, 127 S.Ct.
1955, 1974 (2007).  "'Factual allegations must be enough to raise
a right to relief above the speculative level.'" *Id.*  "While a
complaint attacked by a Rule 12(b)(6) motion to dismiss does not
need detailed factual allegations, a plaintiff's obligation to
provide the 'grounds' of his 'entitlement to relief' requires
more than labels and conclusions, and a formulaic recitation of
the elements of a cause of action will not do."  *Bell Atlantic*,
*id.* at 1964-1965.  Dismissal of a claim under Rule 12(b)(6) is
appropriate only where "it appears beyond doubt that the
plaintiff can prove no set of facts in support of his claim which
would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-
46 (1957).  Dismissal is warranted under Rule 12(b)(6) where the
complaint lacks a cognizable legal theory or where the complaint
presents a cognizable legal theory yet fails to plead essential
facts under that theory.  *Robertson v. Dean Witter Reynolds,*

*Inc.*, 749 F.2d 530, 534 (9th Cir.1984). In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe all inferences from them in the light most favorable to the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir.2002). However, legal conclusions need not be taken as true merely because they are cast in the form of factual allegations. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir.2003). Immunities and other affirmative defenses may be upheld on a motion to dismiss only when they are established on the face of the complaint. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir.1999); *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980) When ruling on a motion to dismiss, the court may consider the facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which the court takes judicial notice. *Parrino v. FHP, Inc*, 146 F.3d 699, 705-706 (9th Cir.1988).

         **2.  <u>Motion to Strike</u>**.

     Rule 12(f) provides in pertinent part that the Court "may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Motions to strike are disfavored and infrequently granted. *Neveu v. City of Fresno,* 392 F.Supp.2d 1159, 1170 (E.D.Cal.2005). A motion to strike should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the

subject matter of the litigation. *Id.* The function of a Rule 12(f) motion to strike is to avoid the expenditure of time and money that might arise from litigating spurious issues by dispensing with those issues prior to trial. *Fantasy, Inc. v. Fogerty,* 984 F.2d 1524, 1527 (9th Cir.1993), *rev'd on other grounds*, 510 U.S. 517 (1994).

B. <u>FIRST CLAIM FOR RELIEF</u>.

The First Claim for Relief for violation of 42 U.S.C. § 1983 is alleged against Woodville and Hagopian. After incorporating all preceding allegations, the First Claim for Relief alleges:

19. Under the Fourteenth Amendment of the United States Constitution, ELEANOR'S liberty interest includes freedom from sexual abuse by government employees. Defendant HAGOPIAN, an employee of WOODVILLE, sexually assaulted ELEANOR, thereby depriving ELEANOR of her liberty interest to be free from sexual abuse by a government employee.

20. Under the Fourteenth Amendment of the United States Constitution, ELEANOR'S liberty interest includes freedom from the non-sexual abuse alleged in paragraph 10 hereinabove. HAGOPIAN, in doing the non-sexual things alleged in paragraph 10 hereinabove, deprived ELEANOR of her liberty interest to be free from harassment and intimidation.

21. Plaintiff is informed and believes, and thereon alleges that WOODVILLE had knowledge of previous misconduct by HAGOPIAN at least one year prior to ELEANOR'S assault in 1996.

22. Plaintiff is informed and believes, and thereon alleges that prior to 1996, a parent, Maria Gomez, filed a report with WOODVILLE about HAGOPIAN'S inappropriate sexual conduct with Mrs. Gomez's child, another student of WOODVILLE. In or about July 2002, Plaintiff's mother was informed by a WOODVILLE school

7

district employee that Maria Gomez had filed this report against HAGOPIAN regarding inappropriate touching of Mrs. Gomez's child.

23. Plaintiff is informed and believes, and thereon alleges that WOODVILLE had knowledge, or should have known, of HAGOPIAN's prior conduct with the child of Maria Gomez, and that the blackened windows in HAGOPIAN'S classroom created an environment that enabled HAGOPIAN'S repeated misconduct.

24. Defendants deprived ELEANOR of her liberty interest under the Fourteenth Amendment, and this deprivation was the proximate result of:

    a. HAGOPIAN'S intentional conduct;

    b. WOODVILLE'S custom or practice of ignoring prior complaints regarding HAGOPIAN'S misconduct;

    c. WOODVILLE'S failure to train HAGOPIAN regarding appropriate behavior once WOODVILLE became aware of such misconduct; and

    d. WOODVILLE'S indifference to the danger in which it placed ELEANOR by permitting blackened windows in WOODVILLE'S classrooms.

Woodville moves to dismiss the First Claim for Relief alleging deprivation of a liberty interest to be free from sexual abuse in violation of the Fourteenth Amendment. Woodville, construing the First Claim for Relief as a *procedural* due process claim, argues that a state tort remedy may provide the hearing necessary to satisfy due process.

In the November 5 Memorandum Decision, the Court stated:

    The Supreme Court has noted: "Although a literal reading of the [Due Process] Clause might suggest that it governs only the procedures by which a State may deprive

8

persons of liberty, for at least 105 years, at least since *Mugler v. Kansas*, 123 U.S. 623 ... [in 1887], the Clause has been understood to contain a substantive component as well ....' *Planned Parenthood v. Casey,* 505 U.S. 833, 846 (1992). This substantive component of the Due Process Clause "protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them." *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992), quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986).

In *Plumeau v. School Dist. No. 40 County of Yamhill*, 130 F.3d 432, 438 (9th Cir.1997), the Ninth Circuit held that a student's liberty interest in bodily integrity under *substantive* due process includes the right to be free from sexual abuse by school employees. Existence of a post-deprivation state remedy does not bar a substantive due process claim under Section 1983. *Rutherford v. City of Berkeley*, 780 F.2d 1444, 1447 (9th Cir.1986), *overruled on other grounds*, *Graham v. Connor*, 490 U.S. 386 (1989). Woodville can be found liable for Hagopian's alleged sexual abuse of Plaintiff if Plaintiff establishes:

> (1) the defendant learned of facts or a pattern of inappropriate sexual behavior by a subordinate pointing plainly toward the conclusion that the subordinate was sexually abusing the student; and
>
> (2) the defendant demonstrated deliberate indifference toward the constitutional rights of the student by failing to take action that was obviously necessary to prevent or stop the abuse; and
>
> (3) such failure caused a constitutional injury to the student.

*Doe v. Benecia Unified School Dist.*, 206 F.Supp.2d 1048, 1053 (E.D.Cal.2002), citing *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443,

454 (5th Cir.), *cert. denied sub nom.,*
*Lankford v. Doe*, 513 U.S. 815 (1994).

To the extent Woodville moves to dismiss the First Claim for Relief alleging deprivation of a liberty interest to be free from sexual abuse in violation of the Fourteenth Amendment, the motions to dismiss is DENIED.  Plaintiff has adequately alleged a *substantive* due process violation.

Paragraph 20 of the First Claim for Relief alleges a deprivation of Plaintiff's liberty interest to be free from harassment and intimidation alleged in Paragraph 10.  Paragraph 10 alleges:

> 10.  Defendant HAGOPIAN, while in the classroom setting engaged in the following non-sexual conduct, including, but not limited to:
>
> a.  HAGOPIAN called overweight students 'fatso,' 'gordo' or 'gordita.'
>
> b.  HAGOPIAN used the 'N' word and would yell out 'White Power.'
>
> c.  HAGOPIAN harassed ELEANOR and others by forcing students to buy his school supplies and asking students for money.
>
> d.  HAGOPIAN called several students 'dumb' and 'stupid.'
>
> e.  HAGOPIAN allowed students to fight each other in class and even encouraged it.
>
> f.  HAGOPIAN confided to another teacher, Wendy, that he made students walk on their hands and knees as a form of punishment.
>
> g.  HAGOPIAN yelled at ELEANOR in

front of the entire class because
                    she did not understand
                    multiplication.

                    h.  HAGOPIAN made ELEANOR massage
                    his feet in front of the entire
                    class and when she refused, he
                    pulled her by her ponytail over to
                    his desk to massage her feet during
                    class in violation of *California
                    Education Code* section 49000.

                    i.  ELEANOR witnessed HAGOPIAN
                    allow one student to chase another
                    student with a real knife in his
                    hand and HAGOPIAN laughed about it.

     Woodville, construing these allegations as stating a

substantive due process claim on the basis of race, moves to

dismiss these allegations for failure to state a claim.

     Plaintiff made the same factual allegations in the FAC.  The

November 5 Memorandum Decision ruled:

                    The Court was unable to find authority
                    allowing a student to proceed with a
                    substantive due process claim based on race
                    discrimination.  The case cited by Plaintiff,
                    *Gomiller v. Dees*, 2007 WL 1031359
                    (N.D.Mass.2007), involved a claim under
                    Section 1983 for denial of equal protection
                    based on race; it did not involve deprivation
                    of a liberty interest in violation of
                    substantive due process.  At the hearing,
                    Plaintiff could not cite a case that allows
                    her to proceed with her substantive due
                    process claim based on alleged racial
                    discrimination.  It is arguable that
                    Plaintiff may state a claim for denial of
                    equal protection.

     The SAC now alleges that Defendant Hagopian's "non-sexual

abuse" deprived Plaintiff of her liberty interest to be free from

harassment and intimidation.  To the extent Woodville moves to

dismiss these allegations as based on race discrimination,

                              11

Woodville has misread the SAC.  Nonetheless, these allegations
fail to state a claim upon which relief can be granted.  There is
no question that Plaintiff has a constitutional right to be free
from state-imposed violations of bodily integrity, including
freedom from excessive physical abuse by school employees.  *See
P.B. v. Koch,* 96 F.3d 1298, 1303 (9th Cir.1996).  Case law does
not recognize a substantive due process violation because of a
teacher's alleged verbal abuse or harassing conduct, either
because it does not "shock the conscience" or because no
constitutionally protected liberty interest is violated.  *See Doe
v. Gooden*, 214 F.3d 952, 955 (8th Cir.2000); *S.M. v. The Lakewood
School District*, 148 F.Supp.2d 542, 547-548 (M.D.Pa.2001);
*Shabazz v. Cole*, 69 F.Supp.2d 177, 200-201 (D.Mass.1999).
Woodville's motion to dismiss the First Claim for Relief is
**GRANTED WITHOUT LEAVE TO AMEND** to the extent the First Claim for
Relief alleges that Hagopian's "non-sexual abuse" deprived
Plaintiff of her liberty interest to be free from harassment and
intimidation.

At the hearing, Plaintiff, referring to the statement in the
November 5 Memorandum Decision that "[i]t is arguable that
Plaintiff may state a claim for denial of equal protection,"
stated that she had inadvertently failed to allege a claim for
denial of equal protection under Section 1983 and requested leave
to amend to do so.  Athough Plaintiff does not appear to have
standing to complain about instances of alleged racial
discrimination against African-Americans, leave to amend is

GRANTED to allege a violation of Plaintiff's right to equal
protection under the Fourteenth Amendment because of alleged
instances of intimidation and harassment by Hagopian based on
Plaintiff's race or national origin.[1]

    C.   <u>SECOND CLAIM FOR RELIEF</u>.

    The Second Claim for Relief is against Woodville and
Hagopian for violation of 20 U.S.C. § 1681. After incorporating
all preceding allegations, the Second Cause of Action alleges:

> 33. From about 1996 through 1997, ELEANOR was
> subject to sexual harassment by HAGOPIAN, who
> was ELEANOR'S third grade teacher at
> WOODVILLE, in that HAGOPIAN performed the
> following acts: HAGOPIAN had blackened his
> classroom windows purposely so that no one
> would be able to see his sexual acts with
> ELEANOR. Defendant HAGOPIAN would force
> ELEANOR to remain in class while he sexually
> touched her. These sexual acts consisted of,
> but not limited to, digital penetration into
> ELEANOR'S vagina, rubbing her clitoris/vulva
> area, touching her body over and under her
> clothing, touching her buttocks and chest,
> and forcing ELEANOR to walk on all fours like
> a dog. While Defendant HAGOPIAN was touching
> ELEANOR, he would repeatedly ask if she
> enjoyed it. Defendant HAGOPIAN told ELEANOR
> that if she told her parents what he was
> doing, they would not believe her and would
> disown her, leaving her without a family.
> ELEANOR believed Defendant HAGOPIAN. Thus,
> she felt very alone, isolated and unable to
> confide in anyone. ELEANOR further suffered
> great emotional trauma, pent-up anger,
> difficulty sleeping, nightmares, inhibitions,
> flashbacks and overwhelming disdain for

---

[1] Although there is a split of authority whether Title IX
subsumes a claim under Section 1983, *see, e.g., Brust v. Regents of
University of Cal.*, 2007 WL 4365521 (E.D.Cal.2007); *Henkle v.
Gregory*, 150 F.Supp.2d 1067 (D.Nev.2001); *Hogan v. Ogden*, 2008 WL
2954245 (E.D.Wash.2008), the Ninth Circuit does not appear to have
yet addressed the issue.

13

Defendant HAGOPIAN, which prohibited her from receiving a proper third grade education, and has had a permanent impact on her young life.

34. Plaintiff is informed and believes, and thereon alleges that WOODVILLE had knowledge of previous misconduct by HAGOPIAN at least one year prior to ELEANOR'S assault in 1996.

35. Plaintiff is informed and believes, and thereon alleges that prior to 1996, a parent, Maria Gomez, filed a report with WOODVILLE about HAGOPIAN'S inappropriate sexual conduct with Mrs. Gomez's child, another student of WOODVILLE. In or about July 2002, Plaintiff's mother was informed by a WOODVILLE school district employee that Maria Gomez had filed this report prior to 1996 against HAGOPIAN regarding inappropriate sexual touching of Mrs. Gomez's child.

36. Plaintiff is informed and believes, and thereon alleges that WOODVILLE had knowledge, of HAGOPIAN's prior conduct with the child of Maria Gomez, and that the blackened windows in HAGOPIAN'S classroom created an environment that enabled  HAGOPIAN'S repeated misconduct.

37. The acts of HAGOPIAN interfered with ELEANOR'S ability to attend school and perform her studies and activities.

38. Despite WOODVILLE'S knowledge of HAGOPIAN'S misconduct, WOODVILLE failed to instruct its personnel on how to respond to sexual harassment of students by teachers. The deliberate indifference of WOODVILLE to the acts of HAGOPIAN as herein alleged, and WOODVILLE'S failure to implement a policy concerning sexual harassment of students by teachers excluded ELEANOR from participation in, denied ELEANOR the benefits of, and subjected ELEANOR to discrimination on the basis of sex.

Woodville moves to dismiss the Second Cause of Action on the ground that Plaintiff has failed to allege that Woodville had actual notice of the alleged sexual abuse.

In *Gebser v. Lago Vista Independent School Dist.*, 524 U.S. 274 (1998), the Supreme Court held that damages are available under Title IX for teacher-on-student sexual harassment only if "an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of the discrimination in the recipient's programs and fails to adequately respond." 524 U.S. at 290. The Supreme Court expressly declined to impose liability on "principals of *respondeat superior* or constructive notice," instead it required actual notice to an official of the defendant. *Id.* at 285. The Supreme Court further held that the failure to adequately respond "must amount to deliberate indifference to discrimination." *Id.* at 290. The "high standard imposed in *Gebser* sought to eliminate any 'risk that the recipient would be liable in damages not for its own official decision but instead for its employees' independent actions." *Davis v. Monroe Cty. Sch. Dist.*, 526 U.S. 629, 643 (1999).

In the November 5 Memorandum Decision, the Court ruled:

> The FAC alleges that "WOODVILLE had knowledge of previous misconduct by HAGOPIAN at least one year prior to ELEANOR's assault in 1996;" that "a parent, Maria Gomez, filed a report with WOODVILLE about HAGOPIAN's inappropriate conduct prior to 1996;" and that "WOODVILLE had knowledge, or should have known, of the blackened windows in HAGOPIAN's classroom prior to ELEANOR's assault, and that these blackened windows created an environment that enabled HAGOPIAN's misconduct."

> Plaintiff cites *Zamora v. North Salem Central School District*, 414 F.Supp.2d 418, 425 (S.D.N.Y.2006):

15

> In the absence of clear authority
> to the contrary, and in
> consideration of the gravity of the
> offense, this Court concludes that
> actual knowledge of a teacher's
> propensity or proclivity to
> sexually harass children may
> constitute actual knowledge, for
> purposes of a subsequent victim's
> Title IX claim.  It remains to be
> seen at a plenary trial whether
> Plaintiffs will ultimately prevail
> in proving that actual notice
> existed in this case ....

> In *Gebser*, the school district's actual
> knowledge of inappropriate teacher comments
> did not put the school district on actual
> notice that the teacher had sexual relations
> with the student.  *Gebser*, 524 U.S. at 279.
> Plaintiff represented at the hearing that she
> could allege additional facts concerning the
> alleged 1996 notice to Woodville of
> Hagopian's sexual abuse of Maria Gomez's
> child.  Woodville's motion to dismiss this
> claim is GRANTED WITH LEAVE TO AMEND.

The SAC does not correct the pleading deficiency noted in the November 5 Memorandum Decision.  The allegations of Woodville's actual notice are essentially identical to those in the FAC.  Plaintiff again relies on *Zamora v. North Salem Central School District,* 414 F.Supp.2d 418, 425 (S.D.N.Y.2006), the case distinguished by the Court in the November 5 Memorandum Decision by the citation to *Gebser*.  The Second Claim for Relief  is DISMISSED WITHOUT LEAVE TO AMEND.

D.   SUPPLEMENTAL STATE LAW CLAIMS FOR RELIEF.

The Sixth Claim for Relief is against Woodville and Hagopian

16

for negligence.[2]  After incorporating all preceding allegations, the Sixth Claim for Relief alleges:

> 62. HAGOPIAN was employed as a teacher, and ELEANOR was his student. HAGOPIAN owed a duty of care to the students who were assigned to his classroom.
>
> 63. HAGOPIAN breached this duty when he sexually assaulted ELEANOR.
>
> 64. HAGOPIAN further breached this duty when he engaged in the following non-sexual conduct in the classroom as alleged hereinabove:
>
> > a. HAGOPIAN called overweight students "fatso," "gordo" or "gordita."
> >
> > b. HAGOPIAN used the "N" word and would yell out "White Power."
> >
> > c. HAGOPIAN harassed ELEANOR and others by forcing students to buy his school supplies and asking students for money.
> >
> > d. HAGOPIAN called several students "dumb" and "stupid."
> >
> > e. HAGOPIAN allowed students to fight each other in class and even encouraged it.
> >
> > f. HAGOPIAN confided to another teacher, Wendy, that he made students walk on their hands and knees as a form of punishment.
> >
> > g. HAGOPIAN yelled at ELEANOR in

---

[2]The Third through Sixth Claims for Relief are supplemental state law claims.  The Third, Fourth, and Fifth Claims for Relief are against Defendant Hagopian for sexual assault, intentional infliction of emotional distress, and false imprisonment, respectively.  Because Hagopian's motion to dismiss and to strike is denied as moot, the Court does not address any grounds for dismissal of these claims for relief.

front of the entire class because
she did not understand
multiplication.

h. HAGOPIAN made ELEANOR massage
his feet in front of the entire
class and when she refused, he
pulled her by her ponytail over to
his desk to massage his feet during
class in violation of *California*
*Education Code* section 49000.

i. ELEANOR witnessed HAGOPIAN allow
one student to chase another
student with a real knife in his
hand and laugh about it.

65. HAGOPIAN repeatedly engaged in the above-described acts toward African Americans and Hispanics.

66. Plaintiff is informed and believes, and thereon alleges that WOODVILLE had knowledge of previous misconduct by HAGOPIAN at least one year prior to 1996.

67. Plaintiff is informed and believes, and thereon alleges that prior to 1996, other parents filed reports with WOODVILLE about HAGOPIAN'S negligent conduct to which plaintiff was subject described above. Notwithstanding the reports of HAGOPIAN'S conduct, at no time did any officials or employees of WOODVILLE acknowledge the conduct directed at plaintiff and other students described hereinabove, or take any disciplinary or other action to attempt to stop the negligent conduct from occurring.

Woodville moves to strike this claim for relief on the ground that Plaintiff did not timely file a claim under the California Tort Claims Act against Defendant Woodville, that rulings by the Tulare County Superior Court are res judicata/collateral estoppel on this issue, and that Plaintiff has improperly split her causes of action.

1          **1.  <u>Woodville's Request for Judicial Notice</u>.**[3]

2          Defendants request the Court take judicial notice of

3    pleadings and rulings made in *Eleanor Teran, a minor through her*

4    *Guardian ad Litem, Magdaline Teran, v. Tulare County Board of*

5    *Education, Woodville Unified School District, Steve Hagopian, and*

6    *Does 1-25,* Tulare County Superior Court Case No. 03-203590;

7    *Eleanor Teran, a minor through her Guardian ad Litem, Magdaline*

8    *Teran, v. Steve Hagopian and Does 1-25*, Tulare County Superior

9    Court Case No. 03-203978; and *Eleanor Teran, etc. v. Woodville*

10   *Union School District, Steve Hagopian, and Does 1-10*, Tulare

11   County Superior Court Case No. 04-209595.

12         Plaintiff does not object to this Request for Judicial

13   Notice.

14              a.  <u>*Eleanor Teran, a minor through her Guardian*</u>

15   <u>*ad Litem, Magdaline Teran, v. Tulare County Board of Education,*</u>

16   <u>*Woodville Unified School District, Steve Hagopian, and Does 1-25,*</u>

17   <u>Tulare County Superior Court Case No. 03-203590</u>.

18         Plaintiff petitioned the Tulare County Superior Court

19   pursuant to California Government Code § 946.6, to be relieved

20   from the requirement that government tort claims must be

21   presented to and acted upon, or denied by operation of law,

22   before suit may be filed against a public entity as to the Tulare

23

24         [3]The Request for Judicial Notice is comprised on 194 pages of
     documents in 13 exhibits.  Defendants did not, as required by the
25   Local Rules, provide the court with a courtesy copy, with the
     exhibits properly tabbed.  Defendants' failure to comply with the
26   Local Rule results in a waste of scarce time.

                                  19

County Board of Education (TCOE) and Woodville.  By Order dated
October 31, 2003, the Superior Court ruled that Petitioner did
not present an application for leave to file a late claim
pursuant to California Government Code § 911.4 against Woodville;
that service of such an application on the Tulare County Board of
Education [TCOE] was not service on Woodville or substantial
compliance with the statutory requirements as to Woodville; that
Plaintiff's claim that Woodville is estopped because Dr. Turk
told Plaintiff that Woodville "was taking care of it", may be
relevant to the defense of estoppel to file a tort claim but does
not support an estoppel relating to the filing of an application
for leave to file a late claim with the TCOE rather than
Woodville; and that, relative to *Eleanor Teran, a minor through
her Guardian ad Litem, Magdaline Teran, v. Steve Hagopian and
Does 1-25*, Tulare County Superior Court Case No. 03-203978, an
action against Hagopian for an injury resulting from an act in
the scope of his employment is barred to the same extent that an
action against Woodville would be barred based on those acts, but
that an action against Hagopian individually, for acts not within
the scope of his employment, would not be barred by failure to
present a claim to Woodville. [Defts. Req., Ex. D].  The Tulare
County Superior Court also ruled:

> Accrual of Cause of Action.  This
> determination was necessary to rule on the
> Petition as to TCOE.  It appears from the
> evidence that the cause of action accrued on
> February 8, 2002, when Petitioner, the victim
> minor's mother, learned definitively of the
> acts by Hagopian in question.

**Timely Tort Claim.**  There is no evidence that any tort claims were presented within six months of accrual of the cause of action.

**Timely § 911.4 Application.**  As answered above, a timely application was made to TCOE, but to no one else.

**Whether this Petition for Relief from the Claim Filing Requirement was timely filed and served.**  The Petition under § 946.6 must be filed within six months of when the application for leave to file late claim was denied, or deemed denied, by the public entity, which was August 7, 2002, as to TCOE. The Petition filed January 13, 2003, was therefore timely as to TCOE.  Since the court has no jurisdiction to hear the Petition as to Woodville, whether or not they were properly served is moot.

...

**Excuses for Non-Compliance.**  Minority and substantial compliance have been discussed above.  Also discussed above was estoppel in the context of failure to present an application for leave to file a late claim. The issue of whether Woodville is estopped to assert the defense of failure to file a claim against Woodville is not properly before the court in this Petition.  Such estoppel must be pleaded and proven as an affirmative bar to a defense of failure to present a claim, which would presumably be asserted by Woodville in answer to a suit filed against it arising out of the subject incidents.

There is no indication in the Request for Judicial Notice whether Plaintiff appealed this ruling as it applied to Woodville.

      b.  *Eleanor Teran, a minor through her Guardian ad Litem, Magdaline Teran, v. Steve Hagopian and Does 1-25, Tulare County Superior Court Case No. 03-203978.*

Plaintiff's complaint, filed on February 13, 2003, alleged

that Hagopian had sexually molested Plaintiff in 1995-1997, while she was attending second and third grade at Woodville School and alleged causes of action for intentional infliction of emotional distress and false imprisonment. [Defts. Req., Ex. E]. As noted, the Superior Court, in Case No. 03-203590, ruled that Plaintiff could not proceed against Hagopian for an injury resulting from an act in the scope of his employment and such a claim is barred to the same extent that an action against Woodville would be barred based on those acts, but that an action against Hagopian individually, for acts not within the scope of his employment, would not be barred by failure to present a claim to Woodville. By minute order filed on May 20, 2003, the case was "stayed per stipulation of counsel." [Defts. Req., Ex. F]. The Request for Judicial Notice does not show the final outcome of this case.

   c. *Eleanor Teran, etc. v. Woodville Union School District, Steve Hagopian, and Does 1-10,* Tulare County Superior Court Case No. 04-209595.

  On April 14, 2004, Plaintiff filed a complaint against Woodville and Hagopian. Plaintiff alleged that Hagopian sexually molested Plaintiff in 1996-1997, while she was in third grade at Woodville Union School, and alleges causes of action for intentional infliction of emotional distress and false imprisonment. The complaint did not allege compliance with the claim requirement of the California Government Code, nor did it allege facts from which Woodville would be estopped to argue failure to comply. [Defts. Req., Ex. G]. Woodville demurred to

22

the complaint based on the October 31, 2003 Order in Case No. 03-203590.  On August 13, 2004, the Superior Court sustained the demurrer without leave to amend, ruling:

> This matter has been fully litigated in another action, Case No. 03-203590, and a ruling on the failure to state a claim against this public entity filed on October 31, 2003, that is dispositive of this case against Woodville Union School District. Therefore, the demurrer is sustained without leave to amend and the case against Woodville is dismissed with prejudice.

[Defts. Req., Ex. I].

On November 14, 2005, Plaintiff filed a First Amended Complaint against Woodville and Hagopian, alleging that Hagopian sexually molested Plaintiff in 1996-1997, while she was in third grade at Woodville Union School.  The First Amended Complaint alleged a cause of action against Woodville pursuant to 42 U.S.C. § 1983 for deprivation of Plaintiff's liberty interest to be free from sexual abuse by government employees; and causes of action for sexual assault, intentional infliction of emotional distress, false imprisonment, and negligence against Hagopian.  The First Amended Complaint did not allege compliance with the claim requirement of the California Government Code, nor did it allege facts by which Woodville would be estopped to argue failure to comply. [Defts. Req., Ex. J].  By minute order filed on May 4, 2006, Plaintiff was ordered to appear and show cause why the action should not be dismissed because of Plaintiff's failure to appear at a May 3, 2006 settlement conference and to file a settlement conference statement. [Defts. Req., Ex. K].  On May

12, 2006, Plaintiff filed a request for dismissal of the First Amended Complaint without prejudice and the dismissal was entered on May 12, 2006. [Defts. Req., Ex. L].

    2. <u>CALIFORNIA GOVERNMENT TORT CLAIM ACT/RES JUDICATA/COLLATERAL ESTOPPEL/FORUM SHOPPING/LACHES</u>.

Defendant Woodville moves to strike the supplemental state law claim for relief alleged against it and/or Defendant Hagopian acting within the course and scope of his employment because of Plaintiff's failure to timely file a tort claim under California law.

Plaintiff concedes that she did not file a timely tort claim against Woodville for Hagopian's alleged acts of sexual abuse within six months of the accrual date of February 8, 2002, as required by California Government Code § 911.2.[4] Plaintiff asserts:

> As a prerequisite to obtain relief from Government Code section 911.2 and the six month filing deadline, application for relief from the claim requirement and leave to make a late claim was filed on July 15, 2002. The application for late claim was presented within the statutory time limits for presentation to a public entity, under California Government Code 911.4, which extends the accrual period to one year. Therefore, the filing of the late claim did not exceed the accrual of the cause of action

---

[4]A claim against a public entity must be presented not later than six months after the accrual of the cause of action. California Government Code § 911.2. Under California Government Code § 945.4, presentation of a timely claim is a condition precedent to the commencement of suit against a public entity. *See Munoz v. State of California*, 33 Cal.App.4th 1767, 1777 (1995).

24

beginning at discovery on February 8, 2002.

To the extent Plaintiff contends that her application for relief from the claim requirement pursuant to Government Code § 911.4 was timely, Plaintiff utterly ignores the October 31, 2003 Order issued by the Tulare County Superior Court in Case No. 03-203590. The Tulare County Superior Court ruled that Plaintiff's application for relief from the claim requirement, although timely as to the Tulare County Board of Education, did not apply to Woodville because Woodville was never served with the application under the requirements of the California Government Tort Claims Act. It is extremely unclear from Plaintiff's opposition brief whether she is arguing that she is not bound by the October 31, 2003 Order under the doctrines of claim/issue preclusion.

A federal court must give a state court judgment the same preclusive effect that it would be given under the law of the state in which judgment was rendered. *Migra v. Warren City School Dist. Bd. of Educ.,* 465 U.S. 75, 81 (1984); 28 U.S.C. § 1738 (state judicial proceedings "shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken").[5]

---

[5]The Supreme Court and the Ninth Circuit have noted a preference for the terms "claim preclusion" and "issue preclusion" as opposed to the less precise terms "res judicata" and "collateral estoppel." *Migra, supra*, 465 U.S. at 77; *Robi v. Five Platters*, 838 F.2d 318, 321-322 (9th Cir.1988).

"In California, res judicata precludes the maintenance of a second suit between the same parties on the same cause of action if the first suit concluded in a final judgment on the merits ... All issues that were litigated or that might have been litigated as part of the cause of action are barred." *Los Angeles Branch NAACP v. Los Angeles Unified Sch. Dist.*, 750 F.2d 731, 736-737 (9th Cir.1984), *cert. denied*, 474 U.S. 919 (1985). As explained in *Mycogen Corp. v. Monsanto Co.*, 28 Cal.4th 888, 896-897 (2002):

> 'Res judicata' describes the preclusive effect of a final judgment on the merits. Res judicata, or claim preclusion, prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them ....
>
> Under the doctrine of res judicata, if a plaintiff prevails in an action, the cause is merged into the judgment and may not be asserted in a subsequent lawsuit; a judgment for the defendant serves as a bar to further litigation of the same cause of action.
>
> A clear and predictable res judicata doctrine promotes judicial economy. Under the doctrine, all claims based on the same cause of action must be decided in a single suit; it not brought initially, they may not be raised at a later date. '"Res judicata precludes piecemeal litigation by splitting a single cause of action or relitigation of the same cause of action on a different legal theory or for different relief."' ... A predictable doctrine of res judicata benefits both the parties and the courts because it 'seeks to curtail multiple litigation causing vexation and expense to the *parties* and wasted effort and expense in *judicial administration.*' ....

"California's res judicata doctrine is based upon the primary right theory." *Mycogen Corp.*, *id.* at 904. In *Crowley v.*

26

*Katleman*, 8 Cal.4th 666, 681-682 (1994), the Supreme Court held:

> The primary right theory is a theory of code
> pleading that has long been followed in
> California.  It provides that a 'cause of
> action' is comprised of a 'primary right' of
> the plaintiff, a corresponding 'primary duty'
> of the defendant, and a wrongful act by the
> defendant constituting a breach of that duty
> ... The most salient characteristic of a
> primary right is that it is indivisible: the
> violation of a single primary right gives
> rise to but a single cause of action. ....
>
> As far as its content is concerned, the
> primary right is simply the plaintiff's right
> to be free from the particular injury
> suffered ... It must therefore be
> distinguished from the *legal theory* on which
> liability for that injury is premised: 'Even
> where there are multiple legal theories upon
> which recovery might be predicated, one
> injury gives rise to only one claim for
> relief.' ... The primary right must also be
> distinguished from the *remedy* sought: 'The
> violation of one primary right constitutes a
> single cause of action, though it may entitle
> the injured party to many forms of relief,
> and the relief is not to be confounded with
> the cause of action, one not being
> determinative of the other.' ....
>
> The primary right theory ... is invoked ...
> when a plaintiff attempts to divide a primary
> right and enforce it in two suits.  The
> theory prevents this result by either of two
> means: (1) if the first suit is still pending
> when the second is filed, the defendant in
> the second suit may plead that fact in
> abatement ...; or (2) if the first suit has
> terminated in a judgment on the merits
> adverse to the plaintiff, the defendant in
> the second suit may set up that judgment as a
> bar under the principles of res judicata.

It could be argued that the October 31, 2003 Order was based
on the bar of the statute of limitations.  California case
authority establishes that a dismissal of an action under a

statute of limitations is not a judgment rendered on the merits for purposes of res judicata. *See Mid-Century Ins. Co. v. Superior Court*, 138 Cal.App.4th 769, 776-777 (2006); *Perez v. Richard Roe I*, 146 Cal.App.4th 171, 183 (2006); *Koch v. Rodlin Enterprises*, 223 Cal.App.3d 1591 (1990); *but see Santos v. Todd Pacific Shipyards Corporation*, 585 F.Supp. 482 (C.D.Cal.1984). However, the October 31, 2003 Order did not hold that Plaintiff's application for relief from late claim was untimely; rather, the Tulare County Superior Court ruled that Plaintiff never presented the application for relief from late claim to Woodville.

Further, Plaintiff does not address collateral estoppel. As explained in *Lucido v. Superior Court*, 51 Cal.3d 335, 341 (1990):

> Collateral estoppel precludes relitigation of issues argued and decided in prior proceedings ... Traditionally, we have applied the doctrine only if several threshold requirements are fulfilled. First, the issue sought to be precluded from relitigation must be identical to that decided in the former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding ... The party asserting collateral estoppel bears the burden of establishing these requirements.

It appears that all of these prerequisites are satisfied here as to the October 31, 2003 Order. *See Gurrola v. County of Los Angeles*, 153 Cal.App.3d 145, 150 (1984)("The ruling on [a Section

28

946.6] petition is a final, appealable order which is given
collateral estoppel effect").

Plaintiff also refers to allegations in Paragraphs 11-15 of
the SAC in arguing that Defendants are estopped from asserting
her failure to timely comply with the claim requirement of the
California Tort Claim Act.

As explained in *John R. v. Oakland Unified School Dist.*, 48
Cal.3d 438, 445 (1989):

> It is well settled that a public entity may
> be estopped from asserting the limitations of
> the claims statute where its agents or
> employees have prevented or deterred the
> filing of a timely claim by some affirmative
> act ... Estoppel most commonly results from
> misleading statements about the need for or
> advisability of a claim; actual fraud or the
> intent to mislead is not essential ... A
> fortiori, estoppel may certainly be invoked
> when there are acts of violence or
> intimidation that are intended to prevent the
> filing of a claim.

Plaintiff's contentions concerning estoppel are not
persuasive because of the October 31, 2003 Order.  If Plaintiff
had served the application for relief from late claim requirement
on Woodville as well as TCOE, the Tulare County Superior Court
would have ruled that her application was timely as to Woodville
as it did with regard to TCOE.  Although the Tulare County
Superior Court did not rule on Plaintiff's contentions that
Woodville was estopped to assert Plaintiff's failure to file a
timely claim as required by Government Code § 911.2, Plaintiff
failed to make such allegations in either the Complaint or First
Amended Complaint filed in Tulare County Superior Court Case No.

04-209595.

Defendants argue that these causes of action should be stricken because of Plaintiff's forum shopping.

*People v. Garcia*, 147 Cal.App.4th 913, 916-917 (2006), holds:

> [T]he general rule is that one superior court judge may not overrule another. 'If the rule were otherwise, it would be only a matter of days until we would have a rule of man rather than a rule of law. To affirm the action taken in this case would lead directly to forum shopping, since if one judge should deny relief, defendants would try another and another judge until finally they found one who would grant what they were seeking. Such a procedure would instantly breed lack of confidence in the integrity of the courts.'

Woodville argues that "plaintiff would have no right to simply file successive actions in the Tulare County Superior Court and by switching file numbers to create new rights." Therefore, Woodville contends, Plaintiff has "no right to now switch to the Federal Court to gain such an advantage."

Plaintiff cites California Code of Civil Procedure § 1008(b):

> A party who originally made an application for an order which was refused in whole or in part, or granted conditionally or on terms, may make a subsequent application for the same order upon new or different facts, circumstances, or law, in which case it shall be shown by affidavit what application was made before, when and to what judge, what order or decisions were made, and what new or different facts, circumstances, or law are claimed to be shown. For a failure to comply with this subdivision, any order made on a subsequent application may be revoked or set aside on ex parte motion.

Plaintiff asserts that "[n]ew facts have presented themselves regarding the discriminatory nature of HAGOPIAN's acts in the classrooms and have been presented in the Amended Complaint." Therefore, she argues, the federal action is based on new or different facts, circumstances, or law, as required by Section 1008(b), and is not a matter of forum shopping. Plaintiff cites *Kerns v. CSE Ins. Group*, 106 Cal.App.4th 368 (2003).

Plaintiff's reliance on Section 1008(b) and *Kerns* is misplaced in the context of Woodville's claim of forum shopping. A federal court is not bound by California rules of civil procedure. Secondly, *Kerns* held that the trial court lacked jurisdiction to consider and grant an insurer's renewed motion for summary judgment after it had been denied by another judge.

Plaintiff's assertion that new facts are alleged concerning Hagopian's racially discriminatory acts is unconvincing. If those acts do not discriminate against Plaintiff because of her Hispanic ethnicity, they are not actionable in this litigation; Plaintiff has no standing to complain about Hagopian's allegedly discriminatory acts against African-Americans. With regard to the alleged discriminatory acts against Plaintiff because of her ethnicity, she was a minor at the time of the alleged actions. "Where the plaintiff is a minor, it is not the knowledge or lack thereof of the minor, but the knowledge or lack thereof of the minor's parents which determines the time of accrual of the cause of action." *Whitfield v. Roth*, 10 Cal.3d 874, 885 (1974). The

31

SAC does not allege when Plaintiff's claims for non-sexual abuse by Hagopian accrued.  More importantly, the SAC does not allege compliance with the claim requirement under the California Government Code with regard to these allegedly newly discovered allegations of non-sexual harassment.

Defendants also base their motion on California's prohibition on splitting a cause of action.  As explained in *Grisham v. Phillip Morris U.S.A., Inc.*, 40 Cal.4th 623, 641-642 (2007):

> 'The longstanding rule in California ... is that "[a] single tort can be the foundation for but one claim for damages."' ... This rule is the corollary of the primary right theory found in California law.  As we have explained: 'The primary right theory is a theory of code pleading that has long been followed in California.  It provides that a "cause of action" is comprised of a "primary right" of the plaintiff, a corresponding "primary duty" of the defendant, and a wrongful act by the defendant constituting a breach of that duty ... The most salient characteristic of a primary right is that it is indivisible: the violation of a single primary right gives rise to but a single cause of action ... A pleading that states the violation of one primary right in two causes of action contravenes the rule against "splitting" a cause of action ... As we further explained: 'The primary right theory has a fairly narrow field of application.  It is invoked most often when a plaintiff attempts to divide a primary right and enforce it in two suits.  The theory prevents this result by either of two means: (1) if the first suit is still pending when the second suit is filed, the defendant in the second suit may plead that fact in abatement ... or (2) if the first suit has terminated in a judgment on the merits adverse to the plaintiff, the defendant in the second suit may set up that judgment as a bar under the

> principles of res judicata ...' ... The cases
> have invoked the rule against splitting
> causes of action in order to abate a later
> suit or bar it on res judicata grounds when
> that suit alleged a different theory of
> recovery for the same injury ... or a
> different remedy for the same injury ... or a
> somewhat greater factual elaboration of the
> same injury ....

Plaintiff contends that, in cases where concurrent jurisdiction exists, it is permissible to file simultaneous parallel state and federal actions. Plaintiff cites *Attwood v. Mendocino Coast Dist. Hosp.*, 886 F.2d 241 (9th Cir.1989).

In *Attwood,* a former employee brought an action against his former employer in state court, alleging wrongful termination. Thereafter, the former employee sued the former employer in federal court. The District Court dismissed the complaint pursuant to *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). Attwood appealed, contending that the District Court should have stayed the federal action, rather than dismissing it. The Ninth Circuit agreed and remanded with instructions to enter an order staying further proceedings pending completion of the state lawsuit. In so ruling, the Ninth Circuit stated:

> It may be that the state proceedings will
> provide complete resolution of Attwood's
> claims and it will be unnecessary to proceed
> further in federal court. That should occur
> in most cases where *Colorado River* is
> invoked, and thus *Colorado River* tends to
> limit the benefits a party might receive from
> forum-shopping. If, for some unexpected
> reason, that complete resolution does not
> occur, it would not be forum-shopping to try
> the unresolved claims in federal court. On

33

> the contrary, in such cases the act of filing
> in federal court is anything but forum-
> shopping, since the federal forum is used
> only if the state forum unexpectedly proves
> inadequate.  Thus our holding protects only
> those parties who are *not* forum-shopping.

*Id.* at 245.

Plaintiff did not file her state and federal actions simultaneously.  She did not file the federal action until 15 months after the final state court action had been dismissed at Plaintiff's request.  She did not seek reconsideration of the Tulare County Superior Court rulings concerning the California Government Tort Claim issue, but appears to contend that the federal court now  has the authority to reconsider those rulings.

Plaintiff argues that forum shopping is only one factor to consider when determining whether to defer and there is no doctrine of abstention which authorizes federal courts to decline jurisdiction on this ground alone, citing *FDIC v. Nichols*, 885 F.2d 633, 637 (9th Cir.1989).

In *Nichols*, it was argued that the District Court properly declined to exercise jurisdiction because the FDIC was engaged in forum shopping.  The Ninth Circuit held:

> ... We are aware of no doctrine of abstention
> or deference of jurisdiction which authorizes
> federal courts to decline to exercise
> jurisdiction on this ground alone.
>
> It is true that several of our recent cases
> involving *Colorado River* deference of
> jurisdiction have held that 'forum shopping'
> may be considered as one among numerous
> factors relevant to determining whether to
> defer ... However, the Supreme Court's
> decisions also make it clear that *Colorado*

34

> *River* deference, which is grounded on
> considerations of 'wise judicial
> administration' and 'conservation of judicial
> resources,' is available only 'in situations
> involving the *contemporaneous* exercise of
> concurrent jurisdictions, either by federal
> courts or by state and federal courts.' ...
> In this case there was no concurrent or
> pending state court proceeding when Downey
> moved for dismissal or when the district
> court declined to act ....
>
> Downey points to two cases decided by the
> same district court, however, to support its
> argument that abstention for forum shopping
> alone is proper.

Woodville does not seek to strike the supplemental claims for relief on the ground of abstention. Woodville asserts that Plaintiff improperly seeks reconsideration or redecision of claims and/or issues resolved against her in the Tulare County Superior Court. Woodville cites no authority allowing the Court to strike claims for relief solely on the ground of forum shopping. It appears that case authority holding dismissal on the ground of forum shopping applies only in the context of federal abstention doctrines. Because there is no ongoing state court proceeding, abstention simply does not apply and California's prohibition against splitting the cause of action is inapplicable.

Plaintiff invokes the equitable tolling doctrine and asserts that "any delay that may have arisen from an erroneous choice of state forum was minimal."

As explained in *Lantzy v. Centex Homes*, 31 Cal.4th 363 (2003):

> Equitable tolling is a judge-made doctrine 'which operates independently of the literal wording of the Code of Civil Procedure' to suspend or extend a statute of limitations as necessary to ensure fundamental practicality and fairness.' ... This court has applied equitable tolling in carefully considered situations to prevent the unjust technical forfeiture of causes of action, where the defendant would suffer no prejudice.

In *Addison v. State of California*, 21 Cal.3d 313 (1978), the Supreme Court noted that California courts have "adhered to a general policy which favors relieving [a] plaintiff from the bar of a limitations statute when, possessing several legal remedies, he, reasonably and in good faith, pursues one designed to lessen the extent of his injuries or damage." *Id.* at 317. *Addison* applied the doctrine of equitable tolling to find that the filing of an action in federal court suspended the running of the six-month limitation period in which a person must file a suit in state court after notice of the rejection of his governmental tort claim. *Id.* at 315-321. *Addison* pointed out that "application of the doctrine of equitable tolling requires timely notice, and lack of prejudice, to the defendant, and reasonable and good faith conduct on the part of the plaintiff." *Id.* at 319. Such elements were found in *Addison* because (1) the plaintiff filed his federal action three and one-half months after rejection of his tort claim, i.e., well within the six-month statute of limitations; (2) the defendants were notified of the action and thus had the opportunity to begin gathering evidence and preparing a defense; and (3) no prejudice to

36

defendants was shown because the plaintiff filed his state action one week before the federal court dismissed the federal action without prejudice to pursuing the claims in state court.  *Id.*

Plaintiff did not commence this federal action until 15 months after she voluntarily dismissed her last state court action.  Plaintiff's choice of a state court forum was not "erroneous" because she could and did allege a federal claim for relief in the last of her state court actions.  "'[S]tate courts have inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United States.' ... To give federal courts exclusive jurisdiction over a federal cause of action, Congress must, in the exercise of its powers under the Supremacy Clause, affirmatively divest state courts of their presumptively concurrent jurisdiction.  *Yellow Freight Systems, Inc. v. Donnelly*, 494 U.S. 820, 823 (1990).

State courts have concurrent jurisdiction over Section 1983 claims.  *Martinez v. California,* 444 U.S. 277, 283 n.7 (1980).  State and federal courts have concurrent jurisdiction over claims under Title IX.  *See Thein v. Feather River Community College*, 2008 WL 2783172 *6 (E.D.Cal.2008); *Fortune ex rel. Fortune v. City of Detroit Public Schools*, 2004 WL 2291333 (Mich.App.2004); *Morrison v. Northern Essex Community College*, 780 N.E.2d 132, 136 n.9 (Mass.App.2002); *H.M. v. Jefferson County Bd. of Educ.*, 719 So.2d 793, 796 (Ala.1998); *Mosley v. Beaumont Indep. Sch. Dist.,* 997 S.W.2d 934, 938 (Tex.Ct.App.1999).

The Seventh Claim for Relief is alleged against Woodville

and Hagopian for violation of Section 601 of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d.  Section 2000d provides:

> No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

The Seventh Claim for Relief, after incorporating all preceding allegations, alleges:

> 72. This is an action for violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. section 2000d, for discrimination based on race based on a hostile racial educational environment which excluded plaintiff from participation in, denied plaintiff the benefits of, and/or subjected plaintiff to discrimination under a program or activity receiving federal financial assistance.

> 73. Defendant is a recipient of federal financial assistance for purposes of Title VI of the Civil Rights Act of 1964, 42 U.S.C. section 2000d.

> 74. At all times herein mentioned, ELEANOR was, an Hispanic student of Woodville Elementary School located in Tulare County, California.

> 75. Beginning in or about 1996, plaintiff was subject to a racially hostile educational environment at WOODVILLE in that HAGOPIAN engaged in the following behavior in the classroom:

> a. HAGOPIAN called overweight students "fatso," "gordo" or "gordita."

> b. HAGOPIAN used the "N" word and would yell out "White Power."

> c. HAGOPIAN harassed ELEANOR and

others by forcing students to buy his school supplies and asking students for money.

d. HAGOPIAN called several students "dumb" and "stupid."

e. HAGOPIAN allowed students to fight each other in class and even encouraged it.

f. HAGOPIAN confided to another teacher, Wendy, that he made students walk on their hands and knees as a form of punishment.

g. HAGOPIAN yelled at ELEANOR in front of the entire class because she did not understand multiplication.

h. HAGOPIAN made ELEANOR massage his feet in front of the entire class and when she refused, he pulled her by her ponytail over to his desk to massage his feet during class in violation of *California Education Code* section 49000.

i. ELEANOR witnessed HAGOPIAN allow one student to chase another student with a real knife in his hand and laugh about it.

76. Plaintiff is informed and believes and thereon alleges that HAGOPIAN repeatedly engaged in the above-described acts toward African Americans and Hispanics, but did not engage in these activities toward students of races other than African American and Hispanic origin.

77. Plaintiff is informed and believes, and thereon alleges that WOODVILLE had knowledge of previous misconduct by HAGOPIAN at least one year prior to 1996.

78. Plaintiff is informed and believes, and thereon alleges that prior to 1996, other parents filed reports with WOODVILLE about HAGOPIAN'S racially offensive conduct to

which plaintiff was subject described above. Notwithstanding the reports of racially offensive conduct by HAGOPIAN, at no time did any officials or employees of WOODVILLE acknowledge the racially offensive conduct directed at plaintiff and other students described hereinabove, or take any disciplinary or other action to attempt to stop the racially offensive conduct from occurring. The deliberate indifference of WOODVILLE to the racially offensive conduct directed at plaintiff and other students and defendant's failure to have and implement a policy concerning racial harassment, or the creation of a hostile racial educational environment by HAGOPIAN excluded plaintiff from participation in, denied plaintiff the benefits of, and subjected plaintiff to discrimination on the basis of race.

No case, state or federal, discussing concurrent and/or exclusive jurisdiction with regard to a claim under Section 601 of Title VI of the Civil Rights Act of 1964, has been located or identified. Nonetheless, there is no language in Title VI or the legislative history from which it may be inferred that Congress, in the exercise of its powers under the Supremacy Clause, affirmatively divested state courts of their presumptively concurrent jurisdiction over claims for relief for violation of Section 601 of Title VI. State courts have routinely exercised jurisdiction over such claims. *See, e.g., Coleman v. Seldin*, 687 N.Y.S.2d 240 (1999); *Texas Educ. Agency v. Stamos on Behalf of Class of All Public School Children in State of Texas,* 817 S.W.2d 378 (1991); *Hammonds v. Lumbee River Elec. Membership Corp.*, 631 S.E.2d 1 (2006).

Plaintiff argues that, if equitable tolling is not applied, she would be denied a hearing on the merits of her claim.

This argument is unpersuasive.  After failing to comply with the requirements of the California Government Tort Claims Act, Plaintiff failed in the state court proceeding to allege that Defendant Woodville was estopped to rely on the claim filing requirement and then, after the last state court action was dismissed at her request, did not file an action in the federal court until 15 months later.  Plaintiff's claims of equitable tolling and equitable estoppel to preserve the supplemental claim for relief are simply unpersuasive given the length of time between the voluntary dismissal of the last state court action and the filing of the federal action; Plaintiff sat on her hands. Plaintiff is collaterally estopped to challenge the October 31, 2003 Order of the state court that she did not file an application for leave to file a late claim with Woodville. Whether she is entitled to assert equitable estoppel against Woodville's claim that she did not file a tort claim at all is irrelevant given the October 31, 2003 state court order.  If she had filed the application for leave to file a late claim with Woodville, the Superior Court would have ruled, as it did with TCOE, that the application was timely.  To go further back to her failure to file a claim and allow her to allege equitable estoppel makes no sense given the state court ruling.

Consequently, Plaintiff's reliance on equitable tolling is unfounded to preserve her supplemental claim for negligence

against Woodville.[6]

"Laches in an equitable defense that prevents a plaintiff, who, '"with full knowledge of the facts, acquiesces in a transaction and sleeps upon his rights."'" *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 950-951 (9th Cir.2001). "To successfully establish laches, a party must show (1) there was inexcusable delay in the assertion of a known right and (2) the party asserting laches has been prejudiced." *O'Donnell v. Vencor, Inc.*, 466 F.3d 1104, 1112 (9th Cir.2006).

Plaintiff's claim of lack of prejudice to Defendants is unpersuasive given that Plaintiff wanted 15 months after the dismissal of her last state court action to commence this federal litigation and the alleged acts upon which her claims are based occurred over ten years ago.

Woodville's motion to dismiss the supplemental state law causes of action is GRANTED WITHOUT LEAVE TO AMEND.

<u>CONCLUSION</u>

For the reasons stated:

1.  Defendant Hagopian's motion to dismiss and to strike is DENIED WITHOUT PREJUDICE AS MOOT;

---

[6]Moreover, it is arguable that Plaintiff is not entitled to equitable tolling of the statutes of limitation applicable to her federal civil rights acts claims for relief while she was pursuing her claim for relief from the claim requirement of the California Government Code. *See Ervin v. Los Angeles County*, 848 F.2d 1018 (9th Cir.1988), *cert. denied*, 489 U.S. 1014 (1989); *Stone v. City and County of San Francisco,* 735 F.Supp. 340 (N.D.Cal.1990); *McMahon v. Albany Unified School Dist.*, 104 Cal.App.4th 1275 (2002). The Court does not address this issue at this time.

2. Defendant Woodville's motion to dismiss and to strike is **GRANTED IN PART WITHOUT LEAVE TO AMEND, GRANTED IN PART WITH LEAVE TO AMEND AND DENIED IN PART;**

3. Plaintiff shall file a Third Amended Complaint in accordance with the rulings in the Memorandum Decision within 20 days of the filing date of this Memorandum Decision.

IT IS SO ORDERED.

Dated:    **March 30, 2009**          **/s/ Oliver W. Wanger**
                                       UNITED STATES DISTRICT JUDGE